UNITED STATES OF AMERICA
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
24-CR-81-02

UNITED STATES OF AMERICA                                    PLAINTIFF

V.

SENTENCING MEMORANDUM

JASON RAY HARRIS                                            DEFENDANT

***** 

Comes the Defendant, Jason Harris, by counsel, and for his Sentencing Memorandum, hereby states as follows:

Mr. Harris is currently before the Court after having taken responsibility for possession with intent to distribute 50 grams or more of Methamphetamine (actual), possession of a firearm in furtherance of drug trafficking and felon in possession of a firearm. According to the Presentence Report (hereinafter PSR), Mr. Harris is facing two mandatory minimums that total 20 years. Based on his criminal history category of II, the effective guideline range is 248-295. The purpose of this Sentencing Memorandum is to address the 18 U.S.C. 3553(a) factors to support the lowest sentence that the Court deems as just.

NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Harris was observed picking up a gift bag from the codefendant herein. Thereafter, he left the scene in a Jeep. When being followed by the police, Mr. Harris fled on foot. In the Jeep, police located 7,791 grams of methamphetamine (actual). A firearm was also located in the vehicle. The main driver of the guideline recommendation in his case is the type of drug involved and the amount of methamphetamine (actual). There is currently a 10 to 1 ratio in the amount of punishment between a mixture of methamphetamine and purer version of the drug in both the guidelines and the mandatory minimum statute.

In *United States v. Robinson*, 2022 WL 17904534 (S.D. Miss. 2022), Judge Carlton W. Reeves (a present Commissioner on the Sentencing Commission) wrote an opinion concerning this distinction.  The average purity of methamphetamine on the streets "was above 96.2% in 2014, 95.6% in 2015, 95.9% in 2016, 96.2% in 2017, 97.5% in 2018, and 97.2% in 2019."  *United States v. Robinson*, 2022 WL 17904534 at *2 (S.D. Miss. 2022).  The *Robinson* case cited to *United States v. Nawanna*, 321 F. Supp. 3d 943 (N.D. Iowa 2018).  "In this case, the United States conceded that there was no empirical basis for the Sentencing Commission's 10-to-1 weight disparity between actual methamphetamine and methamphetamine mixture."  *Robinson* at *3.  "The Guidelines use drug purity as a proxy for culpability.  But national experience suggests this is no longer true for methamphetamine.  The DEA data show that most methamphetamine confiscated today is "pure" regardless of whether the defendant is kingpin or low-level addict."  Id.

In June 2024, the Commission published *Methamphetamine Trafficking Offenses in the Federal Criminal Justice System*.[1]  In this report, the Commission noted that in the past 30 years, legislation concerning methamphetamine has reduced the number of homemade methamphetamine operations, but "Mexican Transnational Criminal Organizations (TCOs) began producing highly pure methamphetamine on an industrial scale and exporting it to the United States."  *Methamphetamine Trafficking Offenses in the Federal Criminal Justice System* at 2.  The Commission also noted that methamphetamine dealers are sentenced more harshly than other hard drugs, including fentanyl. *See* Id.   "Some sentencing courts have recently criticized the methamphetamine penalties as overly punitive and contributing to unwarranted disparities."  Id. at 3.  This ratio is also found in the statutory mandatory minimum because it takes 500 grams of a mixture of methamphetamine instead of 50 grams for the mandatory minimum to kick in.

---

[1] Found at ussc.gov

However, as the information above shows, pure methamphetamine is really what is found in the streets due to the industrial-type production of the drug.

Mr. Harris would be considered a wholesaler due to the amount he possessed because the main producer and supplier is coming from Mexico. In fiscal year 2022, the Commission provided a graph that showed the minimum guideline sentence recommendation and the actual sentence imposed based on the defendant's role in the offense:



Id. at 47.

Roughly 1/3 of methamphetamine traffickers were subject to the mandatory penalties in comparison to about ¼ for all types of other drugs. However, methamphetamine traffickers were more likely to get relief through procedures that allow for a sentence below the mandatory minimum. *See Id.* at 44.

HISTORY AND CHARACTERSTICS OF JASON HARRIS

Jason was reared by his mother in Lexington and his family struggled financially.  He has had no contact with his father in years and did not really have a male role model growing up.  Jason has two minor boys, ages 3 and 12.  He also has another son who is an adult.  The mother of one of his minor children has taken the time to write to the Court about her relationship with Jason and Jason's relationship with his children.    Ms. Shanks has known Jason for 14 years and she says that fatherhood has been one of the most meaningful roles that she has seen Jason step into.  *See* Letter from Courtney Shanks attached hereto as Exhibit A.  She described him as devoted to their son and that he made substantial efforts to have all his children know each other and create family bonds.  He makes sure his children feel a part of his family.  As will be described in other letters attached hereto, since Jason has been incarcerated in this case (since December 2024), they have seen truth growth and change in Jason.

His mother, Joyce Lisle, wrote a letter for Jason with a heavy but hopeful heart that the Court would not just see Jason's past mistakes and crimes, but also to see the whole man before the Court.  *See* Letter from Joyce Lisle attached hereto as Exhibit B.  She, too, speaks about how deeply he loves his children.  "Since Jason has been incarcerated, I have seen a change in him that has given me hope I cannot fully put into words."  Id.  When she speaks to him now, she hears humility, remorse and a sincerity that feels different than before.  A huge part of Jason's change in character comes from his devotion to church, Bible studies and to follow the rules while incarcerated.  "As a mother, knowing that he is using this time to grow spiritually, mentally and emotionally has meant everything to me."  Id.  His sister, Antionette Harris, echoes Ms. Lisle's sentiments and the change that everyone has seen in him that past year and a half.  *See* Letter from Antionette Harris attached hereto as Exhibit C.

Going beyond family, many other individuals have written to the Court about Jason; all of which show that Jason has made true efforts to change and feels remorse for his crime. Elizabeth Sizemore-Howard writes that she has seen genuine reflection and accountability from him. "He has expressed remorse for his actions and understands the harm he has caused." Letter of Elizabeth Sizemore-Howard attached hereto as Exhibit D. She describes these changes as "reading God's Word, living by His commandments, speaking and attending church services." Id. As will be addressed in more detail below, she has noticed that he is mentoring younger men in jail to lead better lives as well. She also gave a specific example of how Jason helped her during her time of need when her own husband battled cancer. She, too, also emphasizes Jason's interaction with his children. See Id.

Julius Johnson also writes noting a genuine change in his life. Mr. Johnson is currently working on his psychology doctorate and says that Jason's change is not superficial or temporary but is reflected in his Jason's eyes. Mr. Johnson recognized the same look in his own life and has been working as a director of re-entry at the Lexington Recue Mission for years. See Letter from Julius Johnson attached hereto as Exhibit E. Another individual named Natasha Burdell-Johnson also writes to the Court. She has been an Ambassador for Christ Ministries for the past 15 years and dedicates her life to helping others, including mentally challenged individuals. She too has seen a remarkable change in Jason. See Letter from Natasha Burdell-Johnson attached hereto as Exhibit F.

Finally, John Shramm, who serves as a volunteer at the jail and provides regular church services. He has come to know Jason through consistent attendance at church services and interactions with Jason. He states that Jason has demonstrated a level of commitment, humility and spiritual growth that truly stands out among the men he serves. Jason's presence in church is

not as a wallflower but he actively engages in the services, both in learning and leading. Jason's commitment to change has been so remarkable that he has been entrusted to preach at the services in the jail. Most importantly, Jason does this with a sincere desire to help and encourage others to be better. "His word are not rehearsed platitudes, they reflect personal conviction, accountability and an understanding that real change requires accountability." What has impressed Pastor Shramm the most is that Jason has shown this consistent conduct over time. Furthermore, Pastor Shramm has seen other inmates look to Jason as voice of calm, guidance and encouragement. "From my firsthand experience, he is not merely speaking about change, he is living it daily in a difficult environment where sincerity is quickly tested." *See* Email from John Shramm attached hereto as Exhibit G.

Finally, Counsel for Jason would echo the sentiment of many of the folks who wrote in his behalf. Since taking over this case from former counsel, current counsel has truly seen Jason take active steps to make amends and give his life to his faith. Jason and Counsel have had many conversations about Jason helping other inmates change their lives while in prison by being a positive role model and with commitment to his faith. Besides being involved in faith-based services in prison, he also wants to receive vocational training so that when he gets out, he will have a leg up on reentry. He wants to learn construction skills so that he can focus on making a living renovating homes. He worked in the home construction business for about 5 to 6 years in this past.

REFLECTION OF SERIOUSNESS OF OFFENSE, RESPECT FOR THE LAW AND JUST PUNISHMENT

As argued above, there is a huge distinction between a mixture and pure methamphetamine in relation to culpability. However, the purposes for this higher-level punishment no longer seems

warranted.  In the past, if someone had pure methamphetamine, then such could split up and diluted to make more drugs to sell.  Presently, what is on the streets, even possessed by low-level users, is mainly pure due to industrial production in Mexico.

Despite this, Jason fully realizes the seriousness of his crime of trafficking as well as possessing a gun in his car while transporting the drugs.  He knows that he must pay his price to society for his actions.  However, Jason plans to use his own accountability for his actions to help mentor other inmates as he has done at the jail.  He will never forget the impact his actions made on his life and he wants to turn his own wrongs into something good that helps others.

DETERRENCE OF CRIMINAL CONDUCT

The next factors under 18 U.S.C. §3553(a) is the deterrence of criminal conduct in general and future deterrence of Jason.  One of the purposes of sentencing an individual is the impact that such a sentence may have on others.  The U.S. Department of Justice/Office of Justice Programs/the Nation Institute of Justice release a publication called *Five Things About Deterrence.*[2]  In this report, it was noted that long prison sentences do very little to deter criminal conduct generally, but the chances of being caught are vastly more effective.  What the report boils down to is that more policing instead of longer sentence is more effective to generally deter criminals.  Furthermore, hopefully, Jason's own present and future mentoring of other inmates will help others readjust better to society and recidivate less.

In relation to specific deterrence of Jason, there are a number of characteristics for Jason that are in his favor.  Usually, the past history of a defendant is indicative of his future behavior.  Jason's Criminal history is a Category II.  Besides defendants with criminal history category I, Category II offenders have the lowest chance of recidivism.  *See* 2016 *Recidivism among Federal*

---

[2] Found at ojp.gov

*Offenders: A Comprehensive Overview* at p.18, fig. 7a.[3]   His arrest and pretrial detention have already made an impact on Jason as indicated by Pastor Shramm and others.  Jason is 45 and with his criminal history of II, the data supports that he is more than twice less likely to recidivate then in then someone with Category III.  *See* Id. at p. 28, Exhibit 9.  *See Recidivism Rates Among Federal Offenders by Age* at p 23.[4] He does not abuse drugs and this lessens his chance of recidivism.  He has extensive family support along with a solid plan for re-entry that is both realistic and based on his experience.

PROVIDING NEED VOCATIONAL TRAINING

Jason would request that the Court recommend that he participate in vocational training while incarcerated.  He would like to be able to study areas in construction.  Although he also wants to obtain a real estate license as well, this state licensing may not be available in the federal system.  He would also request that he be incarcerated as close to home as possible to maintain his relationship with his family.

WAIVER OF FINE AND RECOMMENDATIONS

Finally, Jason requests that the Court waive the fine in his case.  He has no assets and currently has credit card and medical debt. Furthermore, Counsel was appointed to represent him because of his status as indigent.  Jason has every intention of caring for his two boys, both during and after his incarceration.  Therefore, it does not appear that Jason has either the present or future ability to pay a fine and a fine will place a burden on the Defendant and his dependents.  *See* U.S.S.G. §5E1.2(d) and at app. n. 3.

---

[3] Found at ussc.gov
[4] Found at ussc.gov

Respectfully Submitted,


s/ Jeffrey C. Rager
Jeffrey C. Rager
Rager Law
jrager@ragerlawky.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Sentencing Memorandum was served upon Todd Bradbury, AUSA, for the Eastern District of Kentucky through the Court's electronic filing system on this the 4th day of June, 2025.


s/ Jeffrey C. Rager