UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:24-CR-81-S-GFVT-EBA-1

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                              PLEA AGREEMENT

JOSE CARLOS MIRANDA MORALES                                 DEFENDANT

\*    \*    \*    \*    \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1 and 6 of the Superseding Indictment. Count 1 charges conspiracy to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 846, and Count 6 charges conspiracy to launder drug proceeds, in violation of 18 U.S.C. § 1956(h). The Defendant also agrees to forfeiture as outlined in the forfeiture allegation of the Superseding Indictment. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 2 of the Superseding Indictment, as well as the original Indictment, as to this Defendant.

2a.    The essential elements of Count 1 are as follows:

(a) First, that two or more persons formed, reached, or entered into an agreement or understanding to distribute methamphetamine, a Schedule II controlled substance.

1

(b) Second, that at some time during the existence or life of the agreement or understanding, the Defendant knew the purpose of the agreement and deliberately joined the agreement or understanding.

(c) Third, that the amount of methamphetamine attributable to the Defendant as a result of his own conduct, or the conduct of others reasonably foreseeable to him, was 50 grams or more of actual methamphetamine.

2b.    The essential elements of Count 6 are as follows:

(a) First, that the Defendant and at least one other person formed, reached, or entered into an agreement or understanding to commit money laundering crimes.

(b) Second, that the Defendant knowingly and voluntarily joined the conspiracy.

3.    As to Counts 1 and 6, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a)    As to the money laundering conspiracy charged in Count 6 of the Indictment, the Defendant, Jose Carlos MIRANDA Morales, admits that from February 2024 until September 2024, he agreed with at least one other person to launder drug proceeds by what is known as promotional money laundering, and conducted financial transactions by delivering drug proceeds to couriers. After the distribution of controlled substances, MIRANDA would collect the bulk cash that was payment for the drugs. He would count the money and alert members of the larger Drug Trafficking and Money Laundering Organization (DTMLO) that the bulk cash was ready to be picked up for transfer to others.

(b)    MIRANDA admits that he conducted financial transactions with the drug proceeds (U.S. Currency) by delivering the U.S. currency to individuals who were couriers (or were believed to be couriers) for the DTMLO. A serial number

2

from a one-dollar bill (referred to as a bill code or token) was utilized to ensure that MIRANDA was meeting with the correct courier for delivery of the drug proceeds. These deliveries of drug proceeds (commonly referred to as "money drops") affected interstate commerce and were intended to promote the ongoing drug trafficking activity of the organization. On March 12, 2024, MIRANDA delivered $50,000 in bulk cash drug proceeds to an undercover agent in New Orleans, LA. After the delivery of the money by MIRANDA, DEA agents obtained warrants to track his vehicle and track (ping) his phone.

(c)    As to the drug conspiracy offense charged in Count 1, MIRANDA admits that from February 2024 until September 2024, he agreed with at least one other person to distribute large quantities of methamphetamine in the Eastern District of Kentucky (EDKY) and specifically did so on March 17, 2024. On March 17, 2024, New Orleans DEA agents advised Lexington DEA agents that MIRANDA's phone was pinging in Lexington, KY. Lexington DEA located and followed him. They observed him leave from a hotel on Waller Avenue and meet with an individual in a black Jeep. Agents witnessed a hand-off of a gift bag from MIRANDA to a male black subject, who was the only occupant of the Jeep. Kentucky State Police (KSP) officers attempted to stop the Jeep. The driver fled in the Jeep, and then on foot. The gift bag, seen by agents, was located in the vehicle and found to contain 7,791 grams of pure or actual methamphetamine (per DEA Laboratory results). MIRANDA was stopped by police on March 17, 2024, after distributing the gift bag containing methamphetamine. Officers found $14,500 in U.S. currency in a trap in the ceiling of his van.

4. The statutory punishment for Count 1 is imprisonment for not less than 10 years nor more than life imprisonment, a fine of not more than $10,000,000, and a term of supervised release of not less than 5 years. The statutory punishment for Count 6 is not more than 20 years, a fine of not more than $500,000, or twice the value of the property involved in the transaction (whichever is greater), and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 per count applies, and the

3

Defendant will pay this $200 assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) The United States Sentencing Guidelines (U.S.S.G.) Manual will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all the facts set forth in paragraph three and the provided discovery materials.

(c) Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(1), the base offense level for Count 1 is 38 based upon a drug weight of more than 4.5 kilograms of actual methamphetamine.

(d) Pursuant to U.S.S.G. § 2D1.1(b)(18), if the Defendant meets all the criteria at U.S.S.G. § 5C1.2 (1)-(5), decrease the offense level by 2 levels.

(e) Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level for Count 6 is at least 36 based on the offense level for the underlying offense from which the laundered funds were derived, that is, Count 1.

(f) Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), increase the offense level for Count 6 by 2 levels because the Defendant's conviction is for a violation of 18 U.S.C. § 1956.

(g) Pursuant to U.S.S.G. §§ 3D1.2(d), the offenses in Counts 1 and 6 group. Pursuant to U.S.S.G. § 3D1.3(a), the highest offense level for any individual count within a count group shall be the controlling offense level for the entire group, which, in this case, is an offense level of at least 38.

4

(h)    Pursuant to U.S.S.G. § 4C1.1(a), decrease the offense level by 2 levels as a zero-point offender.

(i)    Pursuant to U.S.S.G. § 3E1.1(a) and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level pursuant to U.S.S.G. § 3E1.1(b) based on the Defendant's timely notice of intent to plead guilty.

6. The United States will not advocate for an aggravating role adjustment, *i.e.*, a leadership enhancement, pursuant to U.S.S.G. § 3B1.1. The United States will not advocate for a firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) nor a drug premises enhancement pursuant to U.S.S.G. § 2D1.1(b)(12).

7. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant may appeal any aspect of the sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. The Defendant understands that since he is not a United States citizen, he may be removed from the United States, denied citizenship, and denied admission to the United States in the future because of this conviction.

10. If the Defendant is eligible and applies to transfer his sentence to Mexico pursuant to the international prisoner transfer program, the United States Attorney's Office for the Eastern District of Kentucky will *oppose* the defendant's transfer application. The Defendant acknowledges and understands, however, that the transfer decision rests in the sole discretion of the Office of International Affairs (OIA) of the Criminal Division of the United States Department of Justice and that the position of the United States Attorney's Office for the Eastern District of Kentucky is neither binding nor determinative of the positions of other federal agencies or on the final transfer decision of OIA. The Defendant further understands that in addition to OIA, federal law and the underlying transfer treaties require that the foreign government must also approve the transfer.

11. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees to take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including, but not limited to, executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise

contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

12. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

13. The Defendant agrees to cooperate fully with the United States Attorney's Office and will make a full and complete financial disclosure. Within 30 days from his guilty plea, the Defendant agrees to complete and sign a financial disclosure statement or

7

affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

14. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for

8

demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

16. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant acknowledges that he understands this Agreement, that his attorney has explained it to him, and that his entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT U.S. ATTORNEY

Date: 7/7/2026  By: _____
G. Todd Bradbury
Assistant United States Attorney

9

Date: 07/03/2026

Jose Carlos Miranda Morales
Defendant

Date: 7/3/2026

Jarrod J. Beck
Attorney for Defendant

10